## IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | **CHAPTER 11** |
| **BAVARIA YACHTS USA, LLLP** | ) | |
| | ) | **CASE NO.  16-68583-jrs** |
| Debtor. | ) | |
| | ) | |

## PLAN OF REORGANIZATION FOR BAVARIA YACHTS USA, LLLP

Filed by:

Bavaria Yachts USA, LLLP
Debtor and Debtor in Possession

Attorneys for Debtor
McBRYAN, LLC
Louis G. McBryan
6849 Peachtree Dunwoody Rd
Building B-3, Suite 100
Atlanta GA 30328
(678) 733-9322

COMES NOW, Bavaria Yachts USA, LLLP, Debtor and Debtor in Possession in the above-captioned case ("Debtor"), and, pursuant to Sections 1121 and 1123 of Title 11 of the United States Code (the "Bankruptcy Code") and the Rule 3016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), proposes this Plan of Reorganization (the "Plan") for the resolution of the Claims against and Interests in Debtor. Debtor is the proponent of this Plan within the meaning of Section 1129 of the Bankruptcy Code. The Plan meets all the requirements for confirmation as set forth in Section 1129 of the Bankruptcy Code.

## Article 1
## Introduction

1.1    Disclosure Statement. Contemporaneously with the filing of the Plan, Debtor filed and served a Disclosure Statement, as required by Section 1125 of the Bankruptcy Code. The Disclosure Statement contains the history of Debtor, financial information regarding Debtor and its assets, and a solicitation of acceptance of this Plan.

1.2    Property and Claims. This Plan deals with all property of Debtor and provides for treatment of all Claims against and Interests in Debtor and its property.

## Article 2
## Definitions and General Provisions

For the purposes of this Plan, except as otherwise expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in Article 2.1 of this Plan. Any term that is not defined herein but is defined in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning ascribed to that term therein.

2.1    The following terms, when used in this Plan, shall have the following meanings:

2.1.1    "Administrative Claim" means a Claim for payment of an administrative expense entitled to priority under Section 507(a)(l) of the Bankruptcy Code.

2.1.2    "Allowed Claim" means a Claim or any portion thereof that is enforceable against Debtor or enforceable against the property of Debtor under Sections 502 or 503 of the Bankruptcy Code.

2.1.3    "Allowed Secured Claim" means the amount of the allowed Claim held by parties secured by property of Debtor which is equal to the amount stipulated as constituting the allowed secured claim between the parties or such amount as the Bankruptcy Court allows.

2.1.4    "Allowed Unsecured Claim" means Allowed Claims which are not allowed administrative, priority, or secured claims.

2.1.5    "Assets" means, collectively, all of the property, as defined by Section 541 of the Bankruptcy Code, of the estate of Debtor (including without limitation, all of the assets,

2

property, interests (including equity interests) and effects, real and personal, tangible and intangible, including all Avoidance Actions), wherever situated as such properties exist on the Effective Date or thereafter.

2.1.6   "Avoidance Action" means any claim or cause of action of the Estate arising out of or maintainable pursuant to Sections 502, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code or any other similar applicable law, regardless of whether such action has been commenced prior to the Effective Date.

2.1.7   "Ballot" means each of the ballot forms that are distributed with the Disclosure Statement to Holders of Claims included in the Classes that are impaired under this Plan and are entitled to vote.

2.1.8   "Bankruptcy Case" means the Chapter 11 case initiated by Debtor's filing on the Filing Date of a voluntary petition for relief in the Bankruptcy Court under Chapter 11 of the Bankruptcy Code.

2.1.9   "Bankruptcy Code" means title 11 of the United States Code.

2.1.10   "Bankruptcy Court" means the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division.

2.1.11   "Bankruptcy Rules" means, collectively, the Federal Rules of Bankruptcy Procedure.

2.1.12   "Business Day" means any day on which the commercial banks are required to be open for business in Atlanta, Georgia.

2.1.13   "Cash" means legal tender of the United States of America and equivalents thereof.

2.1.14   "Causes of Action" means all Avoidance Actions and any and all of Debtor's or Reorganized Debtor's actions, suits, accounts, agreements, promises, rights to payment and claims, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured, and whether asserted or assertible directly or derivatively, in law, equity, or otherwise.

2.1.15   "Chapter 11" means Chapter 11 of the Bankruptcy Code.

2.1.16   "Claim" means a claim against Debtor whether or not asserted, as defined in Section 101(5) of the Bankruptcy Code.

2.1.17   "Claims Objection Deadline" means the later of (i) 120 days after the Effective Date, or (ii) such other time as may be ordered by the Bankruptcy Court, as such dates may be from time to time extended by the Bankruptcy Court without further notice to parties in interest.

2.1.18  "Classes" means a category of Claims or Interests described in this Plan.

2.1.19  "Confirmation Date" means the date on which the Bankruptcy Court enters the Confirmation Order.

2.1.20  "Confirmation Hearing" means the hearing before the Bankruptcy Court held to consider confirmation of this Plan and related matters under Section 1128 of the Bankruptcy Code, as such hearing may be continued.

2.1.21  "Confirmation Order" means the order confirming this Plan pursuant to Section 1129 of the Bankruptcy Code that the Bankruptcy Court enters, which shall be in all respects reasonably acceptable to Debtor.

2.1.22  "Debtor" means Bavaria Yachts USA, LLLP, Debtor in this Bankruptcy Case.

2.1.23  "Disallowed Claim" means a Claim or any portion thereof that (i) has been disallowed by a Final Order, (ii) is listed in any of Debtor's Schedules at zero, contingent, disputed, or unliquidated and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court, or (iii) is not listed in Debtor's Schedules and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court.

2.1.24  "Disclosure Statement" means the Disclosure Statement for the Plan of Reorganization filed by Bavaria Yachts USA, LLLP as approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017, as such Disclosure Statement may be amended, modified or supplemented from time to time.

2.1.25  "Disputed Claim" means, with reference to any Claim, a Claim or any portion thereof, that is the subject of an objection timely filed in the Bankruptcy Court and which objection has not been withdrawn, settled or overruled by a Final Order of the Bankruptcy Court.

2.1.26  "Distribution" means any distribution by Debtor or Reorganized Debtor to a Holder of an Allowed Claim.

2.1.27  "District Court" means the United States District Court for the Northern District of Georgia, Atlanta Division.

2.1.28  "Effective Date" means the date that is thirty (30) days after entry of a final non-appealable Confirmation Order.

2.1.29  "Equipment" means the machinery, fixtures, and equipment used by Debtor in the operation of its business.

2.1.30  "Equity security interest" means the interest held by any person or entity in debtor as of the petition date.

2.1.31 "Estate" means, with regard to Debtor, the estate that was created by the commencement by Debtor of the Bankruptcy Case pursuant to Section 541 of the Bankruptcy Code and shall be deemed to include, without limitation, any and all rights, powers, and privileges of such Debtor and any and all interests in property, whether real, personal or mixed, rights, causes of action, avoidance powers or extensions of time that such Debtor or such estate shall have had as of the commencement of the Bankruptcy Case, or which such Estate acquired after the commencement of the Bankruptcy Case, whether by virtue of Sections 541, 544, 545, 546, 547, 548, 549 or 550 of the Bankruptcy Code, or otherwise.

2.1.32 "Executory Contract or Unexpired Lease" means all executory contracts and unexpired leases to which Debtor is a party.

2.1.33 "Filing Date" means October 18, 2016.

2.1.34 "Final Distribution" means the Distribution by Debtor or Reorganized Debtor that satisfies all Allowed Claims to the extent provided in accordance with the Plan.

2.1.35 "Final Distribution Date" means the Distribution Date on which the Final Distribution is made.

2.1.36 "Final Order" means an order of the Bankruptcy Court, the District Court, or any other court as to which (i) any appeal that has been taken has been finally determined or dismissed, or (ii) the time for appeal has expired and no appeal has been filed timely. In the case of an order of the Bankruptcy Court, the time for appeal, for purposes of this definition, shall be the time permitted for an appeal to the District Court.

2.1.37 "Holder" means a holder of a Claim or Interest, as applicable.

2.1.38 "Indemnification Claim" means that claim asserted by Mr. Kenneth Feld, for reimbursement of his legal fees claimed pursuant to the indemnification clause of the Limited Liability Limited Partnership Agreement executed by the partners of the Debtor pre-petition, and which fees were incurred for the defense and representation of Mr. Feld by Steven Estep and the law firm of Cohen, Cooper, Estep and Allen, in the sum of $ 45,560.09.

2.1.39 "Impaired" has the meaning ascribed thereto in Section 1124 of the Bankruptcy Code.

2.1.40 "Initial Distribution Date" means Ten (10) days following the Effective Date or as soon as reasonably practical thereafter, provided, however, that in no event shall the Initial Distribution Date be more than six (6) months after the Effective Date unless otherwise ordered by the Bankruptcy Court.

2.1.41 "Interests" means the equity security interests in Debtor.

2.1.42 "Lien" has the meaning set forth in Section 101(37) of the Bankruptcy Code.

2.1.43 "Maritime Lien Claim" means a claim held by a creditor for services rendered to or upon or work performed on prior to the petition date to or upon a boat owned by debtor.

2.1.44 "Person" means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, governmental unit (as defined in Section 101(27) of the Bankruptcy Code) or other entity.

2.1.45 "Plan" means this plan of reorganization as the same may hereafter be amended, supplemented, restated, or modified.

2.1.46 "Priority Claim" means a Claim entitled to priority under the provisions of Section 507(a) of the Bankruptcy Code other than an Administrative Expense Claim or a Priority Tax Claim.

2.1.47 "Priority Tax Claim" means a Claim against Debtor that is of a kind specified in Section 507(a)(8) of the Bankruptcy Code.

2.1.48 "Professional Compensation" means (i) any amounts that the Bankruptcy Court allows pursuant to Section 330 of the Bankruptcy Code as compensation earned, and reimbursement of expenses incurred, by professionals employed by Debtor and any Committee, and (ii) any amounts the Bankruptcy Court allows pursuant to Sections 503(b)(3) and (4) of the Bankruptcy Code in connection with the making of a substantial contribution to the Bankruptcy Case.

2.1.49 "Record Date" means the date established in the Confirmation Order or any other Final Order of the Bankruptcy Court for determining the identity of Holders of Allowed Claims entitled to Distributions under this Plan. If no Record Date is established in the Confirmation Order or any other order of the Bankruptcy Court, then the Record Date shall be the Confirmation Date.

2.1.50 "Record Holder" means the Holder of a Claim as of the Record Date.

2.1.51 "Released Parties" means collectively Debtor, the Reorganized Debtor, its officers, directors, consultants, agents, financial advisors, and attorneys who served in such capacity on or subsequent to the Filing Date but shall not include any officers or employees of Debtor or Reorganized Debtor with respect to any liability under O.C.G.A. § 48-2-52.

2.1.52 "Reorganized Debtor" means Debtor on or after the Effective Date.

2.1.53 "Retained Action" means all claims, Causes of Action, rights of action, suits and proceedings, whether in law or in equity, whether known or unknown, which Debtor or Debtor's Estate may hold against any Person, including, without limitation, (i) claims and Causes of Action brought prior to the Effective Date, (ii) claims and Causes of Action against any Persons for failure to pay for products or services provided or rendered by any Debtor, (iii) claims and Causes of Action relating to strict enforcement of Debtor's intellectual property rights, including

6

patents, copyrights and trademarks, (iv) claims and Causes of Action seeking the recovery of Debtor's or the Reorganized Debtor's accounts receivable or other receivables or rights to payment created or arising in the ordinary course of Debtor's or the Reorganized Debtor's business, including without limitation, claim overpayments and tax refunds, and (v) all Causes of Action that are Avoidance Actions.

2.1.54   "Schedules" means the Schedules of Assets and Liabilities Debtor filed in the Bankruptcy Case, as such Schedules may be amended from time to time in accordance with Bankruptcy Rule 1009.

2.1.55   "Secured Claim" means a Claim against Debtor to the extent secured by a Lien on any property of Debtor to the extent of the value of said property as provided in Section 506(a) of the Bankruptcy Code.

2.1.56   "Subordinated Claim" means any Unsecured Claim that is subordinated in priority to all other Allowed Unsecured Claims pursuant to the provisions of Section 510 of the Bankruptcy Code or other applicable law.

2.1.57   "Unimpaired" means, with respect to a Class of Claims or Interests, any Class that is not Impaired.

2.1.58   "Unsecured Claim" means any Claim against Debtor that is not a Secured Claim, a Priority Claim, a Priority Tax Claim, or an Administrative Expense Claim.

2.2      Time. Whenever the time for the occurrence or happening of an event as set forth in this Plan falls on a day which is a Saturday, Sunday, or legal holiday under the laws of the United States of America or the State of Georgia, then the time for the next occurrence or happening of said event shall be extended to the next day following which is not a Saturday, Sunday, or legal holiday.

## Article 3
### Classification of Claims and Interests; Impairment

3.1      Summary. The categories of Claims and Interests set forth below classify all Claims against and Interests in Debtor for all purposes of this Plan. A Claim or Interest shall be deemed classified in a particular Class only to the extent the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class. The treatment with respect to each Class of Claims and Interests provided for in Article 4 shall be in full and complete satisfaction, release and discharge of such Claims and Interests.

1.       Class 1 shall consist of the Priority Tax Claims.

2.       Class 2 shall consist of those claims secured by Maritime Liens.

3.       Class 3 shall consist of General Unsecured Claims.

4.       Class 4 shall consist of the Unsecured Convenience Class Claims.

5.       Class 5 shall consist of the Equity Security Interests.

## Article 4
### Treatment of Claims and Interests

The classification and treatment of Claims and Interests are set forth herein below:

1.       <u>Class 1: Priority Tax Claims</u>. The Internal Revenue Service will be paid the full amount of the tax and interest as claimed on the Proof of claim no. 7-5, but the penalties asserted shall not be paid unless and until all other unsecured claims are paid in full.

The California Franchise Tax Board filed claim no. 17-1 asserting a unsecured priority claim for taxes in the amount total amount of $2,975.03, some of which includes penalties. The tax claim in the amount of $2485.32 shall be paid in full with interest as claimed in the proof of claim, but costs and penalties shall not be paid unless and until all other unsecured claims are paid in full.

Debtor shall pay the Holder of an Allowed Class 1 Government Unit Tax Claim as described herein on the Initial Distribution Date, unless extended by agreement of the applicable Holder of the Class 1 Governmental Unit Tax Claim.

Holders of Class 1 Claims are impaired and entitled to vote to accept or reject the Plan.

2.       <u>Class 2: Claims Secured by Maritime Liens</u>. Class 2 are those claims asserted to be secured by Maritime Liens. Debtor engaged certain boat yards to perform repairs on boats in its possession pre- and post-petition. Boatyards or persons or entities that performed work on boats owned by Debtor on the Petition Date may be entitled to a claim of lien under maritime law. Upon the sale of the boats post-petition free and clear of liens, all valid liens attached to the proceeds of the sale.  Debtor shall pay in full Allowed Claims Secured by Maritime Liens with interest on the principal amount of the claim commencing on the Petition Date at 3.5% per annum but shall not pay late fees, attorney's fees and costs.  Payments to Class 2 shall be made on the Initial Distribution Date. Debtor reserves its right to object to any and all claims.

The Holder of a Class 2 Claim are impaired and entitled to vote to accept or reject the Plan.

3.       <u>Class 3: General Unsecured Claims</u>. Holders of Allowed General Unsecured Claims shall receive payment equivalent to their pro rata share of the Distribution Pool after payment of Class 1, 2, and 4 are paid. Payments shall be made in two installments beginning with the Initial Distribution Date, being Ten (10) days after the Effective Date or as near as practicable, of approximately 50% of the remaining Distribution Pool, and then a final second installment after the resolution of the claim's objections. Debtor reserves its right to object to any and all claims.

There are approximately seventy-one (71) claims included in Class 3.

8

The Holders of Class 3 Claims are impaired and are entitled to vote to accept or reject the Plan.

4.      Class 4: Unsecured Convenience Claims. These claims consist of Allowed Unsecured Claims claiming less than or equal to $10,000.00. Holders of Class 4 claims shall receive the equivalent of 25% of each entity's allowed claim in a one-time lump sum distribution equivalent to the amount of the Allowed Unsecured Claim. Payments shall be made on the Initial Distribution Date.

There are approximately 53 potential claims included in Class 4 totaling approximately $100,000.00.

The Holder of any allowed claim between $10,000.00 and $15,000.00 may choose to reduce its claim to $10,000.00 to become part of Class 4. Nothing herein shall constitute an admission as to the nature, validity or amount of the claim. Debtor reserves the right to object to any and all claims.

The Holders of Class 4 claims are impaired and are entitled to vote to accept or reject the Plan.

5.      Class 5: Equity Security Interest Claims. The equity security interests held by all General Partners and Limited Partners will be cancelled and no new interests will be created and there will not be a Reorganized Debtor other than for the purposes of liquidating all assets for the benefit of classes of interest superior to Class 5 interests. There shall be no distribution to any Equity Interest Holder in their capacity as an Equity Interest Holder. There are some Equity Interest Holders who are also creditors who may receive distributions solely in their capacity as Class 3 or Class 4 Creditors.

### Article 5
### Treatment of Unclassified Claims

5.1.    Summary. Pursuant to Section 1123(a)(l) of the Bankruptcy Code, Administrative Expense Claims against Debtor are not classified for purposes of voting on or receiving Distributions under this Plan. Holders of such Claims are not entitled to vote on this Plan. All such Claims are instead treated separately in accordance with this Article 5 and in accordance with the requirements set forth in Section 1129(a)(9)(A) of the Bankruptcy Code.

The Indemnification Claim asserted by Mr. Feld shall be paid as if it were an Administrative Expense and paid on or about the Effective Date of the Plan.

Administrative Claims shall be paid in full on or before the later of the Effective Date of the Plan or entry of a Final Order allowing the Claim, unless otherwise agreed between Debtor and the Claimant, or such earlier date as the Court may direct. Debtor intends to pay all Administrative Claims from the proceeds of its ongoing operations.

5.2.    <u>Administrative Expense Claims</u>.

Subject to the provisions of Sections 328, 330(a) and 331 of the Bankruptcy Code, each Holder of an Allowed Administrative Expense Claim will be paid the full unpaid amount of such Allowed Administrative Expense Claim in Cash on the latest of (i) the Effective Date, (ii) as soon as practicable after the date on which such Claim becomes an Allowed Administrative Expense Claim, (iii) upon such other terms as may be agreed upon by such Holder and Debtor or the Reorganized Debtor, or (iv) as otherwise ordered by the Bankruptcy Court; provided, however, that Allowed Administrative Expense Claims representing obligations incurred by Debtor in the ordinary course of business, or otherwise assumed by Debtor on the Effective Date pursuant to this Plan, including any tax obligations arising after the Filing Date, will be paid or performed by the Reorganized Debtor when due in accordance with the terms and conditions of the particular agreements or non-bankruptcy law governing such obligations.

Except as otherwise provided in this Plan, any Person holding an Administrative Expense Claim, other than an Administrative Expense Claim arising from the operation by Debtor of their business in the ordinary course of business, shall file a proof of such Administrative Expense Claim with the Bankruptcy Court within thirty (30) days after the Reorganized Debtor provides notice by mail or by publication, in a form and manner approved by the Court, of the occurrence of the Effective Date. At the same time any Person files an Administrative Expense Claim, such Person shall also serve a copy of the Administrative Expense Claim upon counsel for the Reorganized Debtor. Any Person who fails to timely file and serve a proof of such Administrative Expense Claim shall be forever barred from seeking payment of such Administrative Expense Claims by Debtor, the Estate, or the Reorganized Debtor.

Any Person seeking an award by the Bankruptcy Court of Professional Compensation shall file a final application with the Bankruptcy Court for allowance of Professional Compensation for services rendered and reimbursement of expenses incurred through the Effective Date within sixty (60) days after the Effective Date or by such other deadline as may be fixed by the Bankruptcy Court.

**Article 6**
**Means for the Implementation of the Plan**

6.1.    <u>Parties Responsible for Implementation of the Plan</u>. Upon confirmation, the Reorganized Debtor will be charged with administration of the Case. The Reorganized Debtor will be authorized and empowered take such actions as are required to effectuate the Plan, including the prosecution and enforcement of Causes of Action. The Reorganized Debtor will file all post-confirmation reports required by the United States Trustee's office. The Reorganized Debtor will also file the necessary final reports and will apply for a final decree as soon as possible after substantial consummation, the completion of the claims analysis and objection process, and following entry of Final Orders in all Bankruptcy Court litigation. Confirmation of the Plan is not likely to be followed by the need for further financial reorganization, as this is liquidating plan for the benefit of creditors, with no equity interest receiving a distribution nor property retained for any matter other than for liquidation.

6.2    <u>Sources of Cash for Distribution</u>. Distributions under the Plan will be made from the proceeds of the post-petition sales of Debtor's boats. These proceeds total approximately $1,213,804.33, and any monetary recovery from the pending Adversary Proceedings.

6.3.    <u>Preservation of Causes of Action</u>. In accordance with Section 1123(b)(3) of the Bankruptcy Code, the Reorganized Debtor will retain and may (but is not required to) enforce all Retained Actions. After the Effective Date, the Reorganized Debtor, in its sole and absolute discretion, shall have the right to bring, settle, release, compromise, or enforce such Retained Actions (or decline to do any of the foregoing), without further approval of the Bankruptcy Court. The Reorganized Debtor (or any successors, in the exercise of their sole discretion), may pursue such Retained Actions so long as it is the best interests of the Reorganized Debtor (or any successors holding such rights of action). The failure of Debtor to specifically list any claim, right of action, suit, proceeding or other Retained Action in this Plan or Plan Supplement does not, and will not be deemed to, constitute a waiver or release by Debtor or the Reorganized Debtor of such claim, right of action, suit, proceeding or other Retained Action, and the Reorganized Debtor will retain the right to pursue such claims, rights of action, suits, proceedings and other Retained Actions in its sole discretion and, therefore, no preclusion doctrine, collateral estoppel, issue preclusion, claim preclusion, estoppel Judicial, equitable or otherwise or laches will apply to such claim, right of action, suit, proceeding or other Retained Actions upon or after the confirmation or consummation of this Plan.

6.4.    <u>Effectuating Documents, Further Transactions</u>. Debtor and the Reorganized Debtor and its officers and designees are authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such action as may be necessary, desirable or appropriate to effectuate and further evidence the terms and conditions of this Plan or to otherwise comply with applicable law.

6.5.    <u>Exemption from Certain Transfer Taxes and Recording Fees</u>. Pursuant to Section 1146(c) of the Bankruptcy Code, any transfers from Debtor to the Reorganized Debtor or to any other Person or entity pursuant to or in contemplation of this Plan, or any agreement regarding the transfer of title to or ownership of any of Debtor's real or personal property will not be subject to any document recording tax, stamp tax, conveyance fee, sales tax, intangible or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the Confirmation Order will direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

6.6.    <u>Further Authorization</u>. The Reorganized Debtor shall be entitled to seek such orders, judgments, injunctions and rulings as it deems necessary or desirable to carry out the intentions and purposes, and to give full effect to the provisions of this Plan.

6.7.    <u>Liabilities of the Reorganized Debtor</u>. The Reorganized Debtor will not have any liabilities except those expressly assumed under the Plan. The officer of Debtor on the Effective Date shall continue to serve as officer of the Reorganized Debtor after the Effective Date.

## Article 7
## Distributions

7.1     <u>Disbursing Agent</u>. Unless otherwise provided for herein, all Distributions under this Plan shall be made by the Reorganized Debtor or its agent.

7.2     <u>Distributions of Cash</u>. Any Distribution of Cash made by the Reorganized Debtor pursuant to this Plan shall, at the Reorganized Debtor's option, be made by check drawn on a domestic bank or by wire transfer from a domestic bank.

7.3     <u>No Interest on Claims or Interests</u>. Unless otherwise specifically provided for in this Plan, the Confirmation Order, or a post-petition agreement in writing between Debtor and a Holder, post-petition interest shall not accrue or be paid on Claims, and no Holder shall be entitled to interest accruing on or after the Filing Date on any Claim. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a Final Distribution is made when and if such Disputed Claim becomes an Allowed Claim.

7.4     <u>Delivery of Distributions</u>. The Distribution to a Holder of an Allowed Claim shall be made by the Reorganized Debtor (a) at the address set forth on the proof of claim ·filed by such Holder, (b) at the address set forth in any written notices of address change delivered to Debtor or Reorganized Debtor after the date of any related proof of claim, (c) at the addresses reflected in the Schedules if no proof of claim has been filed and Debtor or Reorganized Debtor has not received a written notice of a change of address, or (d) if the Holder's address is not listed in the Schedules, at the last known address of such Holder according to Debtor's books and records. If any Holder's Distribution is returned as undeliverable, no further Distributions to such Holder shall be made unless and until the Reorganized Debtor is notified of such Holder's then-current address, at which time all missed Distributions shall be made to such Holder without interest. Amounts in respect of undeliverable Distributions made in Cash shall be retained by the Reorganized Debtor until such Distributions are claimed. All Cash Distributions returned to the Reorganized Debtor and not claimed within six (6) months of return shall be irrevocably retained by the Reorganized Debtor notwithstanding any federal or state escheat laws to the contrary.

7.5     <u>Distributions to Holders as of the Record Date</u>. All Distributions on Allowed Claims shall be made to the Record Holders of such Claims. As of the close of business on the Record Date, the Claims register maintained by the Bankruptcy Court shall be closed, and there shall be no further change in the Record Holder of any Claim. The Reorganized Debtor shall have no obligation to recognize any transfer of any Claim occurring after the Record Date. The Reorganized Debtor shall instead be entitled to recognize and deal for all purposes under this Plan with the Record Holders as of the Record Date.

7.6     <u>De Minimis Distributions.</u> The Reorganized Debtor shall have no obligation to make a Distribution if the amount to be distributed to the specific Holder of the Allowed Claim has a value less than Fifteen Dollars ($15.00).

7.7     Fractional Dollars. Any other provision of this Plan notwithstanding, the Reorganized Debtor shall not be required to make Distributions or payments of fractions of dollars. Whenever any payment of a fraction of a dollar under this Plan would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or less being rounded down.

7.8     Withholding Taxes. Debtor or the Reorganized Debtor, as the case may be, shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions under this Plan shall be subject to any such withholding and reporting requirements.

### Article 8
### Procedures for Treating and Resolving Disputed Claims

8.1     Objections to Claims. The Reorganized Debtor shall be entitled to object to Claims, provided, however; that Debtor and Reorganized Debtor shall not be entitled to object to Claims (i) that have been Allowed by a Final Order entered by the Bankruptcy Court prior to the Effective Date, or (ii) that are Allowed by the express terms of this Plan. Any objections to Claims must be filed by the Claims Objection Deadline.

8.2     No Distributions Pending Allowance. Except as otherwise provided herein, no Distributions will be made with respect to any portion of a Claim unless and until (i) the Claims Objection Deadline has passed and no objection to such Claim has been filed, or (ii) any objection to such Claim has been settled, withdrawn or overruled pursuant to a Final Order of the Bankruptcy Court.

8.3     Resolution of Claims Objections. On and after the Effective Date, the Reorganized Debtor shall have the authority to compromise, settle, otherwise resolve, or withdraw any objections to Claims without approval of the Bankruptcy Court.

### Article 9
### Provision for Assumption of Unexpired Leases and Executory Contracts

9.1 Unexpired Leases. On the Filing Date Debtor was party to one unexpired lease of an office in Atlanta, GA. Upon its own terms, that lease expired. To the Extent any party claims to have an Unexpired lease or Executory Contract such is rejected and deemed rejected upon the Effective Date. Should a party assert the existence of such an unexpired lease or executory contract, they must file a claim within 30 days of the Effective Date if they assert a damage claim.

### Article 10
### Effect of Plan on Claims and Interests

10.1 Revesting of Assets. Except as otherwise explicitly provided in this Plan, on the Effective Date, all property comprising the Estate (including Retained Actions, but excluding property that has been abandoned pursuant to an order of the Bankruptcy Court) shall revest in Debtor, free and clear of all Claims, Liens, charges, encumbrances, rights and Interests of

13

creditors and equity security holders, except as specifically provided in this Plan. As of the Effective Date, the Reorganized Debtor may operate its business and use, acquire, and dispose of property and settle and compromise Claims or Interests without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by this Plan or the Confirmation Order.

10.2. Discharge of Debtor. Pursuant to Section 114l(d) of the Bankruptcy Code, except as otherwise specifically provided in this Plan or in the Confirmation Order, the Distributions and rights that are provided in this Plan shall be in complete satisfaction, discharge, and release of all Claims, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in Debtor, the Reorganized Debtor or its Estate that arose prior to the Effective Date.

10.3    Release by Debtor of Certain Parties. Except as otherwise specifically provided in this Plan, pursuant to Section 1123(b)(3) of the Bankruptcy Code, as of the Effective Date, Debtor, in its individual capacity and as Debtor in possession for and on behalf of its Estate, shall release and discharge and be deemed to have conclusively, absolutely, unconditionally, irrevocably and forever released and discharged all Released Parties for and from any and all claims or Causes of Action existing as of the Effective Date in any manner arising from, based on or relating to, in whole or in part, Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims or Interests prior to or in the Bankruptcy Cases, or any act, omission, occurrence, or event in any manner related to any such Claims, Interests, restructuring or the Bankruptcy Case. The Reorganized Debtor and other potential representatives of the Estate shall be bound, to the same extent Debtor are bound, by all of the releases set forth above.

10.4    **Release by Holders of Claims and Interests. EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THIS PLAN, ON THE EFFECTIVE DATE, (a) EACH PERSON THAT VOTES TO ACCEPT THIS PLAN OR IS PRESUMED TO HAVE VOTED FOR THIS PLAN PURSUANT TO SECTION 1126(1) OF THE BANKRUPTCY CODE; AND (b) TO THE FULLEST EXTENT PERMISSIBLE UNDER APPLICABLE LAW, AS SUCH LAW MAY BE EXTENDED OR INTERPRETED SUBSEQUENT TO THE EFFECTIVE DATE, EACH ENTITY (OTHER THAN DEBTOR), THAT HAS HELD, HOLDS OR MAY HOLD A CLAIM OR INTEREST (EACH, A "RELEASE OBLIGOR"), IN CONSIDERATION FOR THE OBLIGATIONS OF THE  DEBTOR AND THE REORGANIZED DEBTOR UNDER THIS PLAN AND THE CASH AND OTHER CONTRACTS, INSTRUMENTS, RELEASES, AGREEMENTS OR DOCUMENTS TO BE DELIVERED IN CONNECTION WITH THIS PLAN, SHALL HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY AND FOREVER, RELEASED AND DISCHARGED  EACH RELEASED PARTY FROM ANY CLAIM OR CAUSE OF ACTION EXISTING AS OF THE EFFECTIVE DATE ARISING FROM, BASED ON OR RELATING TO, IN WHOLE OR IN PART, THE SUBJECT MATTER OF, OR THE TRANSACTION OR EVENT GIVING RISE TO, THE CLAIM OF SUCH RELEASE OBLIGOR, AND ANY ACT, OMISSION, OCCURRENCE, OR EVENT IN ANY MANNER RELATED TO SUCH SUBJECT**

14

**MATTER, TRANSACTION OR OBLIGATION; PROVIDED, HOWEVER, THAT THIS ARTICLE 10.4 SHALL NOT RELEASE ANY RELEASED PARTY FROM ANY CAUSE OF ACTION HELD BY A GOVERNMENTAL ENTITY EXISTING AS OF THE EFFECTIVE DATE, BASED ON (i) THE INTERNAL REVENUE CODE OR OTHER DOMESTIC STATE, CITY OR MUNICIPAL TAX CODE, (ii) THE ENVIRONMENTAL LAWS OF THE UNITED STATES OR ANY DOMESTIC STATE, CITY OR MUNICIPALITY, (iii) ANY CRIMINAL LAWS OF THE UNITED STATES OR ANY DOMESTIC STATE, CITY OR MUNICIPALITY, (iv) THE SECURITIES EXCHANGE ACT OF 1934, AS AMENDED, THE SECURITIES ACT, OR OTHER SECURITIES LAWS OF THE UNITED STATES OR ANY DOMESTIC STATE, CITY, OR MUNICIPALITY, OR (v) SECTIONS 1104-1109 AND 1342(d) OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, AS AMENDED.**

10.5    <u>Setoffs</u>. Debtor may, but shall not be required to, set off against any Claim, the payments or other Distributions to be made pursuant to this Plan in respect of such Claim, claims of any nature whatsoever that Debtor may have against such Holder; but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by Debtor or the Reorganized Debtor of any such claim that Debtor or the Reorganized Debtor may have against such Holder.

10.6    <u>Exculpation and Limitation of Liability.</u> Debtor, the Reorganized Debtor, and any of such party's respective current and/or post-Filing Date and pre-Effective Date members, officers, directors, employees, advisors, attorneys, representatives, financial advisors, investment bankers, or agents and any of such party's successors and assigns, shall not have or incur, and are hereby released from, any claim, obligation, cause of action, or liability to one another or to any Holder of any Claim or Interest, or any other party-in-interest, or any of its respective agents, employees, representatives, financial advisors, attorneys, or Affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the Bankruptcy Case, the negotiation and filing of this Plan, the filing of the Bankruptcy Case, the pursuit of confirmation of this Plan, the consummation of this Plan, or the administration of this Plan or the property to be distributed under this Plan, except for their willful misconduct or gross negligence, and in all respects shall be entitled to reasonably rely upon the advice of  counsel with respect to its duties and responsibilities under this Plan. No Holder of any Claim or Interest, or other party in interest, none of its respective agents, employees, representatives, financial advisors, attorneys, or Affiliates, and no successors or assigns of the foregoing, shall have any right of action against the parties listed in this provision for any act or omission in connection with, relating to, or arising out the Bankruptcy Case, the pursuit of confirmation of this Plan, the consummation of this Plan, the administration of this Plan or the property to be distributed under this Plan.

10.7    <u>Injunction</u>. The satisfaction, release, and discharge pursuant to this Article 10 shall act as a permanent injunction against any Person commencing or continuing any action, employment of process, or act to collect, offset, or recover any Claim or Cause of Action satisfied, released, or discharged under this Plan to the fullest extent authorized or provided by the Bankruptcy Code, including, without limitation, to the extent provided for or authorized by Sections 524 and 1141 thereof.

10.8    Effect of Confirmation.

10.8.1  Binding Effect. On the Confirmation Date, the provisions of this Plan shall be binding on Debtor, the Estate, all Holders of Claims against or Interests in Debtor, and all other parties-in-interest whether or not such Holders are Impaired and whether or not such Holders have accepted this Plan.

10.8.2  Effect of Confirmation on Automatic Stay. Except as provided otherwise in this Plan, from and after the Effective Date, the automatic stay of Section 362(a) of the Bankruptcy Code shall terminate.

10.8.3  Filing of Reports. The Reorganized Debtor shall file all reports and pay all fees required by the Bankruptcy Code, Bankruptcy Rules, U.S. Trustee guidelines, and the rules and orders of the Bankruptcy Court.

10.8.4  Post-Effective Date Retention of Professionals. Upon the Effective Date, any requirement that professionals comply with Sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date will terminate, and the Reorganized Debtor will employ and pay professionals in its ordinary course of business.

## Article 11
## Conditions Precedent

11.1    Conditions to Confirmation. The following are conditions precedent to confirmation of this Plan that may be satisfied or waived in accordance with Article 11.3 of this Plan.

11.1.1  The Bankruptcy Court shall have approved the Disclosure Statement with respect to this Plan in form and substance that is acceptable to Debtor, in its sole and absolute discretion; and

11.1.2  The Confirmation Order shall have been signed by the Bankruptcy Court and entered on the docket of the Bankruptcy Case.

11.1.3  All fees payable under Section 1930 of title 28, as determined by the court at the hearing on confirmation of the plan have been paid.

11.2    Conditions to the Effective Date. The following are conditions precedent to the occurrence of the Effective Date, each of which may be satisfied or waived in accordance with Article 11.3 of this Plan.

11.2.1  The Confirmation Order shall not have been vacated, reversed or modified and, as of the Effective Date, shall not be stayed;

11.2.2  All documents and agreements to be executed on the Effective Date or otherwise necessary to implement this Plan (including documents relating to the Exit Financing) shall be in form and substance that is acceptable to Debtor in its reasonable discretion;

11.2.3  Debtor shall have received any authorization, consent, regulatory approval, ruling, letter, opinion, or document that may be necessary to implement this Plan and that is required by law, regulation, or order.

11.3    Waiver of Conditions to Confirmation or Consummation. The conditions set forth in Article 11.1 and Article 11.2 of this Plan may be waived, in whole or in part, by Debtor without any notice to any other parties in interest or the Bankruptcy Court and without a hearing. The failure to satisfy or waive any condition to the Confirmation Date or the Effective Date may be asserted by Debtor in its sole discretion regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by Debtor). The failure of Debtor to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right, which may be asserted at any time.

## Article 12
### Retention and Scope of Jurisdiction of the Bankruptcy Court

12.1    Retention of Jurisdiction. Subsequent to the Effective Date, the Bankruptcy Court shall have or retain jurisdiction for the following purposes:

12.1.1  To adjudicate objections concerning the allowance, priority or classification of Claims and any subordination thereof, and to establish a date or dates by which objections to Claims must be filed to the extent not established herein;

12.1.2  To liquidate the amount of any disputed, contingent or unliquidated Claim, to estimate the amount of any disputed, contingent or unliquidated Claim, to establish the amount of any reserve required to be withheld from any distribution under this Plan on account of any disputed, contingent or unliquidated Claim;

12.1.3  To hear and rule upon all Retained Actions, Avoidance Actions and other Causes of Action commenced and/or pursued by Debtor and/or the Reorganized Debtor;

12.1.4  To hear and rule upon all applications for Professional Compensation;

12.1.5  To remedy any defect or omission or reconcile any inconsistency in this Plan, as may be necessary to carry out the intent and purpose of this Plan;

12.1.6  To construe or interpret any provisions in this Plan and to issue such orders as may be necessary for the implementation, execution and consummation of this Plan, to the extent authorized by the Bankruptcy Code;

12.1.7  To adjudicate controversies arising out of the administration of the Estate or the implementation of this Plan;

17

12.1.8  To make such determinations and enter such orders as may be necessary to effectuate all the terms and conditions of this Plan, including the Distribution of funds from the Estate and the payment of claims;

12.1.9  To determine any suit or proceeding brought by Debtor and/or the Reorganized Debtor to recover property under any provisions of the Bankruptcy Code;

12.1.10      To hear and determine any tax disputes concerning Debtor and to determine and declare any tax effects under this Plan;

12.1.11      To determine such other matters as may be provided for in this Plan or the Confirmation Order or as may be authorized by or under the provisions of the Bankruptcy Code;

12.1.12      To determine any controversies, actions or disputes that may arise under the provisions of this Plan, or the rights, duties or obligations of any Person under the provisions of this Plan;

12.1.13      To adjudicate any suit, action or proceeding seeking to enforce any provision of, or based on any matter arising out of, or in connection with, any agreement pursuant to which Debtor sold any of its assets during the Bankruptcy Case; and

12.1.14      To enter a final decree.

12.2    Alternative Jurisdiction. In the event that the Bankruptcy Court is found to lack jurisdiction to resolve any matter, then the District Court shall hear and determine such matter. If the District Court does not have jurisdiction, then the matter may be brought before any court having jurisdiction with regard thereto.

12.3    Final Decree. The Bankruptcy Court may, upon application of the Reorganized Debtor after Designated Notice, at any time on or after one hundred twenty (120) days after the Initial Distribution Date, enter a final decree in this case, notwithstanding the fact that additional funds may eventually be distributed to parties in interest. In such event, the Bankruptcy Court may enter an Order closing this case pursuant to Section 350 of the Bankruptcy Code, provided, however, that: (a) the Reorganized Debtor shall continue to have the rights, powers, and duties set forth in this Plan; (b) any provision of this Plan requiring the absence of an objection shall no longer be required, except as otherwise ordered by the Bankruptcy Court; and (c) the Bankruptcy Court may from time to time reopen the Bankruptcy Case if appropriate for any of the following purposes: (1) administering Assets; (2) entertaining any adversary proceedings, contested matters or applications Debtor has brought or brings with regard to the liquidation of Assets and the prosecution of Causes of Action; (3) enforcing or interpreting this Plan or supervising its implementation; or (4) for other cause.

### Article 13
### Miscellaneous Provisions

13.1    Modification of the Plan. Debtor may modify this Plan pursuant to Section 1127 of the Bankruptcy Code and as herein provided, to the extent applicable law permits. Debtor may

modify this Plan in accordance with this paragraph, before or after confirmation, without notice or hearing, or after such notice and hearing as the Bankruptcy Court deems appropriate, if the Bankruptcy Court finds that the modification does not materially and adversely affect the rights of any parties in interest which have not had notice and an opportunity to be heard with regard thereto. In the event of any modification on or before confirmation, any votes to accept or reject this Plan shall be deemed to be votes to accept or reject this Plan as modified, unless the Bankruptcy Court finds that the modification materially and adversely affects the rights of parties in interest which have cast said votes. Debtor reserves the right in accordance with Section 1127 of the Bankruptcy Code to modify this Plan at any time before the Confirmation Date.

13.2    Allocation of Plan Distributions Between Principal and Interest. To the extent that any Allowed Claim entitled to a Distribution under this Plan is composed of indebtedness and accrued but unpaid interest thereon, such distribution shall, to the extent permitted by applicable law, be allocated for United States federal income tax purposes to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to the portion of the Claim representing accrued but unpaid interest.

13.3    Applicable Law. Except to the extent that the Bankruptcy Code or the Bankruptcy Rules are applicable, the rights and obligations arising under this Plan shall be governed by the laws of the State of Georgia.

13.4    Preparation of Estate Returns and Resolution of Tax Claims. Debtor or Reorganized Debtor shall file all tax returns and other filings with governmental authorities and may file determination requests under Section 505(b) of the Bankruptcy Code to resolve any Disputed Claim relating to taxes with a governmental authority. Debtor shall file a Final Tax Return and dissolve the Partnership upon disbursement of all funds in the Distribution Pool.

13.5    Headings. The headings of the Articles and the Sections of this Plan have been used for convenience only and shall not limit or otherwise affect the meaning thereof.

13.6    Revocation of Plan. Debtor reserves the right, unilaterally and unconditionally, to revoke and/or withdraw this Plan at any time prior to entry of the Confirmation Order, and upon such revocation and/or withdrawal this Plan shall be deemed null and void and of no force and effect.

13.7    No Admissions; Objection to Claims. Nothing in this Plan shall be deemed to constitute an admission that any individual, corporation, partnership, trust, venture, governmental unit, or any other form of legal entity as being the Holder of a Claim is the Holder of an Allowed Claim, except as expressly provided in this Plan. The failure of Debtor to object to or examine any Claim for purposes of voting shall not be deemed a waiver of Debtor's rights to object to or re-examine such Claim in whole or in part.

13.8    No Bar to Suits. Except as otherwise provided in Article 10 of this Plan, neither this Plan or confirmation hereof shall operate to bar or estop Debtor or Reorganized Debtor from commencing any Cause of Action, or any other legal action against any Holder of a Claim or any

individual, corporation, partnership, trust, venture, governmental unit, or any other form of legal entity, whether such Cause of Action, or any other legal action arose prior to or after the Confirmation Date and whether or not the existence of such Cause of Action, or any other legal action was disclosed in any disclosure statement filed by Debtor in connection with this Plan or whether or not any payment was made or is made on account of any Claim.

       13.9    <u>Exhibits/Schedules</u>. All exhibits and schedules to this Plan, including any Plan Supplement, and all attachments thereto, are incorporated into and are a part of this Plan as if set forth in full herein.

       13.10   <u>Conflicts</u>. In the event that provisions of the Disclosure Statement and provisions of this Plan conflict, the terms of this Plan shall govern.

### Article 14
### Tax Consequences

       Tax consequences resulting from confirmation of the Plan can vary greatly among the various Classes of Creditors and Holders of Interests, or within each Class. Significant tax consequences may occur as a result of confirmation of the Plan under the Internal Revenue Code and pursuant to state, local, and foreign tax statutes. Because of the various tax issues involved, the differences in the nature of the Claims of various Creditors, the taxpayer status and methods of accounting and prior actions taken by Creditors with respect to their Claims, as well as the possibility that events subsequent to the date hereof could change the tax consequences, this discussion is intended to be general in nature only. No specific tax consequences to any Creditor or Holder of an Interest are represented, implied, or warranted. Each Holder of a Claim or Interest should seek professional tax advice, including the evaluation of recently enacted or pending legislation, because recent changes in taxation may be complex and lack authoritative interpretation.

       THE PROPONENT ASSUMES NO RESPONSIBILITY FOR THE TAX EFFECT THAT CONSUMMATION OF THE PLAN WILL HAVE ON ANY GIVEN HOLDER OF A CLAIM OR INTEREST. HOLDERS OF CLAIMS OR INTERESTS ARE STRONGLY URGED TO CONSULT THEIR OWN TAX ADVISORS CONCERNING THE FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE PLAN TO THEIR INDIVIDUAL SITUATION.

       The receipt by a Creditor or Interest Holder of cash or property in full or partial payment of its Claim or Interest may be a taxable event. To the extent that a portion of the cash or the fair market value of any property received is attributable to accrued and unpaid interest on a Claim being paid, a Creditor may recognize interest income. A Creditor or Interest Holder may also recognize gain or loss equal to the difference between the sum of the amount of cash received and the adjusted basis in the Claim or Interest for which the Holder receives amounts under the Plan. Such gain or loss may be treated as ordinary or capital depending upon whether the Claim or Interest is a capital asset.

Under the backup withholding rules of the Tax Code, a Holder of a Claim may be subject to backup withholding at the rate of thirty-one percent (31%) with respect to Distributions made pursuant to the Plan unless such Holder (i) is a corporation or comes within certain other exempt categories and, when required, demonstrates this fact, or (ii) provides a correct taxpayer identification number and certifies under penalty of perjury that the taxpayer identification number is correct and that it is not subject to backup withholding due to a failure to report all dividends and interest. Any amount so withheld will be credited against the Holder's federal income tax liability.

Bavaria Yachts USA, LLLP

By: Oddbody, LLC, its General Partner

By: Kenneth Feld, Its Managing Member
Debtor and Debtor in Possession

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| BAVARIA YACHTS USA, LLLP | ) | CASE NO. 16-68583-JRS |
| | ) | |
| Debtor. | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

I certify that I have served a copy of the foregoing **Debtor's Plan of Reorganization** with the Clerk of Court using the CM/ECF system which will send electronic notification to all users who have consented to such service and those parties requesting notice electronically in accordance with BLR 5005-8 to the following:

Thomas W. Dworschak, Esq.
thomas.w.dworschak@usdoj.gov

Richard L. Robbins, Esq.
rrobbins@robbinsfirm.com

Shayna M. Steinfeld, Esq.
shayna@steinfeldlaw.com

James Morawetz, Esq.
Jim.h.morawetz@usdoj.gov

John F. Isbell, Esq.
john.isbell@thompsonhine.com

John A. Christy, Esq.
jchristy@swfllp.com

Jason S. Alloy, Esq.
jalloy@robbinsfirm.com

Walter E. Jones, Esq.
wjones@balch.com

Gordon Appleman, Esq.
gordon.appleman@tklaw.com

Scott Riddle, Esq.
scott@scottriddlelaw.com

J. Robert Williamson, Esq.
rwilliamson@swlawfirm.com

Brian Lake, Esq.
Brian.Lake@robbinsfirm.com

Jonathan A. Akins, Esq.
jakins@swfllp.com

Katharine Battaia Clark, Esq.
katie.clark@tklaw.com

Leia Ashlin Clement Shermohammed, Esq.
lshermohammed@kslaw.com

John C. Rogers
jrogers@carlockcopeland.com

This 1st day of March 2019.

**McBRYAN, LLC**

/s/Louis G. McBryan
Louis G. McBryan, Georgia Bar No. 480993
Cecilia J. Christy, Georgia Bar No. 370092
6849 Peachtree Dunwoody Rd
Building B-3, Suite 100
Atlanta, GA 30328
Telephone (678) 733-9322
Fax (678)498-2709
lmcbryan@mcbryanlaw.com
**Attorneys for Debtor**